GRIESING LAW, LLC
By:     Alva C. Mather, Esq. (Id No. 42342004)
        Ashley Kenney Shea, Esq. (Id No. 909902012)
1717 Arch Street
Suite 3630
Philadelphia, PA 19103
(215) 618-3720
(215) 814-9049 [fax]
amather@griesinglaw.com
ashea@griesinglaw.com
www.griesinglaw.com

***Attorneys for Defendant, Counterclaimant and Third-
Party Plaintiff Hunterdon Brewing Company, LLC***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| ANHEUSER-BUSCH, LLC | : |
| | : |
| Plaintiff | : |
| Counterclaim Defendant | : |
| | : |
| v. | :    Civil Action No.  3:15-cv-03128-PGS |
| | : |
| HUNTERDON BREWING CO., LLC | : |
| | : |
| Defendant, Counterclaimant, | : |
| and Third-Party Plaintiff | : |
| | : |
| v. | : |
| | : |
| ELYSIAN BREWING CO. | : |
| | : |
| Third-Party Defendant | : |

_____:

## AMENDED ANSWER, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT
## ON BEHALF OF HUNTERDON

Defendant Hunterdon Brewing Company, LLC ("Defendant" or "Hunterdon"), by

through its undersigned counsel, hereby files this Amended response to Plaintiff Anheuser-

Busch, LLC's ("A-B") Complaint with Counterclaims and Affirmative Defenses as follows:

## NATURE OF THE CASE

1.      Admitted in part; denied in part.  It is admitted only that A-B initiated this action, but it is expressly denied that A-B complied with the Practices Act by first paying Hunterdon the fair market value of its business with respect to the Elysian brands.

2.      Denied.  The allegations of paragraph 2 state a conclusion of law to which no response is required. To the extent a response is required, Hunterdon denies same.

## PARTIES

3.      Denied.  To the extent a response is required, Hunterdon is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies same.

4.      Admitted.

## JURISDICTION AND VENUE

5.      Denied.  The allegations of paragraph 5 state a conclusion of law to which no response is required.  To the extent a response is required, Hunterdon denies same.

6.      Denied.  The allegations of paragraph 6 state a conclusion of law to which no response is required.  To the extent a response is required, Hunterdon denies same.

## FACTS

7.      Admitted.

8.      Denied. Hunterdon is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies same.

9.      Admitted in part; denied in part. It is admitted only that Hunterdon distributes craft beers in New Jersey and that prior to A-B's termination Hunterdon had the sole and

exclusive right to distribute the Elysian brands in the State of New Jersey.  The remaining allegations of this paragraph are denied.

10.    Admitted.

11.    Denied.  Hunterdon is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies same.

12.    Denied.  The allegations of this paragraph contain a conclusions of law to which no response is required.  To the extent a response is required, Hunterdon denies same.

13.    Denied.  The allegations of this paragraph contain conclusions of law to which no response is required.  To the extent a response is required, Hunterdon denies same.

14.    Denied.  The allegations of this paragraph contain conclusions of law to which no response is required.  To the extent a response is required, Hunterdon denies same.

15.    Denied.  The allegations of this paragraph contain conclusions of law to which no response is required.  To the extent a response is required, Hunterdon denies same.

16.    Denied.  The allegations of this paragraph contain conclusions of law to which no response is required. To the extent a response is required, Hunterdon denies same.

17.    Admitted.

18.    Denied.  Hunterdon is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies same.

19.    Denied.  The allegations of this paragraph contain conclusions of law to which no response is required. To the extent a response is required, Hunterdon denies same.

20.    Denied.  The allegations of this paragraph contain conclusions of law to which no response is required.  To the extent a response is required, Hunterdon denies same.

21.     Denied.  The allegations of this paragraph contain conclusions of law to which no response is required.  To the extent a response is required, Hunterdon denies same.

22.     Admitted in part, denied in part.  It is admitted only that representatives of A-B reached out to Hunterdon representatives to discuss potential payment for Hunterdon's distribution rights with respect to the Elysian brands.  It is specifically denied that A-B sought to "reach a mutually satisfactory arrangement . . . in order to avoid" terminating Hunterdon pursuant to the successor brewer provision of the Practices Act.  It is further denied that A-B's efforts were "rebuffed."

23.     Admitted in part; denied in part.  It is admitted only that Keenan Conrad contacted Michael Short to discuss potential payment for Hunterdon's distribution rights to the Elysian brands.  The remaining allegations of this paragraph are denied as stated.

24.     Admitted in part; denied in part.  It is admitted only that Randy Jozwiakowksi contacted Timothy Sheehan to discuss potential payment for Hunterdon's distribution rights to the Elysian brands.  The remaining allegations of this paragraph are denied as stated.

25.     Admitted in part; denied in part.  It is admitted only that counsel for Hunterdon sent a letter on April 24, 2015 to Matt Thompson, Vice President of Sales for Elysian Brewing Company regarding Elysian's refusal to comply with the terms of its existing distribution agreement with Hunterdon to ship product to Hunterdon.  The remaining allegations of this paragraph are denied as the letter is a document that speaks for itself.

26.     Admitted in part; denied in part.  It is admitted only that counsel for Hunterdon sent a letter on April 24, 2015 to Matt Thompson, Vice President of Sales for Elysian Brewing Company regarding Elysian's refusal to comply with the terms of its existing distribution

agreement with Hunterdon to ship product to Hunterdon.  The remaining allegations of this paragraph are denied as the letter is a document that speaks for itself.

27.     Denied.

28.     Admitted in part; denied in part.  It is admitted only that on May 1, 2015 A-B responded to Hunterdon's correspondence of April 24, 2105 with a letter from a member of A-B's Legal Department.  The remaining allegations of this paragraph are denied as the letter is a document that speaks for itself.

29.     Denied.

30.     Admitted in part, denied in part.  It is admitted only that on May 4, 2015 Hunterdon received a check in the amount of $562,883.46 and the letter attached as Exhibit 1 to the Complaint.  It is specifically denied that the amount was a "fair market value payment."  The remaining allegations of this paragraph contain conclusions of law to which no response is required.  To the extent a response is required, Hunterdon denies same

31.     Denied.  Hunterdon is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies same.

32.     Admitted in part, denied in part.  It is admitted only that in its May 4, 2015 letter of termination A-B requested that Hunterdon provide certain commercially sensitive information so that A-B could "confirm the accuracy" of its payment.  The remaining allegations of this paragraph are denied as the letter is a document that speaks for itself.

33.     Admitted in part, denied in part.  It is admitted only that gross profit multiples are used at times to express the value of beer distribution rights.  The remaining allegations of this paragraph, specifically the suggestion that gross profit multiples are the sole or only way of valuing beer distribution rights, are denied.

34.     Admitted in part, denied in part.  It is admitted only that gross profit multiples are used at times to express the value of beer distribution rights.  The remaining allegations of this paragraph, specifically the suggestion that gross profit multiples are the sole or only way of valuing beer distribution rights, are denied.

35.     Admitted in part, denied in part.  It is admitted only that a multiple of gross profits is a method for valuing brand distribution rights.  The remaining allegations of this paragraph, specifically the suggestion that gross profit multiples are the sole or only way of valuing beer distribution rights, are denied.

36.     Denied.

37.     Denied. Hunterdon is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies same.

38.     Denied. Hunterdon is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies same.

39.     Denied. Hunterdon is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and therefore denies same.

## COUNT ONE
### *Declaration that Anheuser-Busch Complied with the Practices Act and Paid Fair Market Value for the Elysian Brands*

40.     Denied.  Hunterdon incorporates herein it's responses to the allegations set forth in the preceding paragraphs as though fully set forth herein.

41.     Denied. The allegations of this paragraph contain conclusions of law to which no response is required. To the extent a response is required, Hunterdon denies same.

42.     Denied. The allegations of this paragraph contain conclusions of law to which no response is required. To the extent a response is required, Hunterdon denies same.

6

43.     Denied. The allegations of this paragraph contain conclusions of law to which no response is required. To the extent a response is required, Hunterdon denies same.

44.     Denied. The allegations of this paragraph contain conclusions of law to which no response is required. To the extent a response is required, Hunterdon denies same.

45.     Denied. The allegations of this paragraph contain conclusions of law to which no response is required. To the extent a response is required, Hunterdon denies same.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

A-B is not entitled to the relief it seeks due to the doctrine of unclean hands.

### SECOND AFFIRMATIVE DEFENSE

A-B is not entitled to the relief it seeks due to AB's failure to comply with the requirements set forth in the Practices Act.

### THIRD AFFIRMATIVE DEFENSE

A-B is not entitled to the relief it seeks due to the doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE

A-B is not entitled to the relief it seeks due to A-B's failure to adhere to or perform conditions precedent to the termination of Hunterdon's distribution rights to the Elysian brands pursuant to the Practices Act.

### FIFTH AFFIRMATIVE DEFENSE

A-B is not entitled to the relief it seeks because it failed to mitigate its damages.

## SIXTH AFFIRMATIVE DEFENSE

The relief A-B seeks is barred based on A-B's own conduct.

## SEVENTH AFFIRMATIVE DEFENSE

A-B's claims are barred in whole or in part to the extent that they seek attorneys' fees because brewers are not entitled to attorneys' fees under the Practices Act.

## EIGHTH AFFIRMATIVE DEFENSE

A-B is not entitled to the relief it seeks because A-B assumed the risk that it did not comply with the Practices Act when it unilaterally determined the value of Hunterdon's business with respect to the Elysian brands and terminated Hunterdon's distribution rights.

## NINTH AFFIRMATIVE DEFENSE

A-B is not entitled to the relief it seeks because A-B failed to act in a commercially reasonable manner.

## TENTH AFFIRMATIVE DEFENSE

Hunterdon reserves the right, upon completion of its discovery and investigation or otherwise, to assert such additional defenses as may be appropriate.

WHEREFORE, Hunterdon respectfully requests judgment in its favor and against A-B, together with an award of attorneys' fees and costs and such other and further relief as the Court deems just and appropriate.

## COUNTERCLAIM AGAINST ANHEUSER-BUSCH

Pursuant to Federal Rules of Civil Procedure 13, Hunterdon Brewing Company, LLC ("Hunterdon"), by its undersigned counsel, in support of its Counterclaim against Plaintiff Anheuser-Busch, LLC ("A-B") states as follows:

## PARTIES

1.      Hunterdon is a New Jersey limited liability company with its principal place of business at 12 Coddington Road, Whitehouse Station, New Jersey 0889.  Hunterdon is a beer wholesaler who specializes in the distribution of craft beer, specialty imports, spirits, sakes, meads and ciders throughout the State of New Jersey.

   a.      Hunterdon Brewing Company, LLC is a wholly owned subsidiary of Craft Beer Guild Holding Company, LLC, a privately-held Delaware Limited Liability Company.

   b.      Craft Beer Guild Holding Company, LLC is held in trust by eight individual member trusts, each owning a 12.5% share of its stock.  Each of Craft Beer Guild Holding Company, LLC's member trusts as well as the Trustee of each of the individual member trusts are Massachusetts citizens.

2.      Counterclaim Defendant Anheuser-Busch ("A-B") is a Missouri limited liability company with its principal place of business at One Busch Place, St. Louis, Missouri 63118.  A-B is one of the largest brewers of beer in the United States.

   a.      Upon information and belief, the sole member of A-B is Anheuser-Busch Companies, LLC, a Delaware limited liability company with its principal place of business at One Busch Place, St. Louis, Missouri 63118.

9

b.     Upon information and belief the sole member of Anheuser-Busch Companies is Anheuser-Busch InBev Worldwide, Inc., a Delaware corporation with its principal place of business at One Busch Place, St. Louis, Missouri 63118.

3.     Third-Party Defendant Elysian Brewing Company is a Washington corporation with its principle place of business at 6010 Airport Way S., Seattle, WA 98108.

## JURISDICTION AND VENUE

4.     The Court has jurisdiction under 28 U.S.C. §§ 1332 and 2201. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, there is complete diversity of citizenship, and actual controversy exists between the parties.

5.     Venue in this district is proper pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in the District of New Jersey and Hunterdon Brewing resides in the District of New Jersey.

## FACTS

6.     Elysian is a craft brewer based in Seattle, Washington, which currently distributes its award winning brands of craft beers by way of wholesale distributors in eleven (11) states, including New Jersey.

7.     In or about 2008, Hunterdon and Elysian entered into an agreement granting Hunterdon the exclusive right to distribute Elysian's brands of beer (the "Elysian brands") throughout the state of New Jersey.

8.     The Elysian brands have received numerous awards regarding their superior quality and taste and are generally considered within the craft beer community to be one of the top and fastest growing craft brands.

9.    The Elysian brands are popular, high growth brands which contribute substantially to the profitability of Hunterdon's business.

10.    For example, from 2011 to 2014 Hunterdon increased its sales of the Elysian brands anywhere from 70% to 150% over the previous years' numbers.

11.    To support this growth, Hunterdon made substantial investments in time and resources in marketing and promoting the Elysian brands, at times expending sums beyond what it would otherwise normally expend on similarly situated brands given Hunterdon's history of rapidly growing the Elysian brands as well as its belief that the Elysian brands would continue to increase in sales and related profitability to Hunterdon.

12.    Elysian has known of, supported, encouraged and induced Hunterdon to invest substantial monies in the marketing and promotion of the Elysian brands in New Jersey.

13.    On January 23, 2015, Hunterdon received a letter from A-B announcing that it would be acquiring Elysian and its brand family effective early second quarter of 2015 and that A-B had decided it wanted the brands to be distributed through its network of A-B Equity Agreement wholesalers in New Jersey.  A true and correct copy of the letter is attached hereto as Exhibit A.

14.    A-B further indicated in its January 23, 2015 letter that if an agreement could not be reached regarding "transitioning" the Elysian brands to its New Jersey wholesalers that it would "consider implementing the procedures described in the laws of your state to facilitate a transfer of the brands."

15.    In other words, if Hunterdon did not agree to the terms upon which A-B wanted to "transition" the Elysian brands, A-B would terminate Hunterdon's distribution rights.

16.     Despite A-B's indication in its letter that one of its New Jersey wholesalers would be contacting Hunterdon "shortly to discuss the basis for transiting" no A-B New Jersey wholesaler contacted Hunterdon.

17.     Over a month later, and for the first time since receiving A-B's letter, Hunterdon was contacted by a representative of A-B, Keenan Conrad, to discuss potential payment and related terms regarding Hunterdon's rights with respect to the Elysian brands.

18.     During the call, Michael Short of Hunterdon communicated that rather than accept a payment for Hunterdon's rights to the Elysian brands, Hunterdon wanted to pursue a brand trade whereby Hunterdon would pay 12 times gross profit for any difference in volume between the Elysian brands and the brands Hunterdon would receive in return.

19.     Michael Short communicated that 12 times gross profit was a fair price given the prominence, national recognition and potential of the Elysian brands and the craft brands in discussion.

20.     After discussing Hunterdon's offer with others at A-B, Keenan Conrad called Michael Short several days later stating that the fair market price for beer distribution rights in New Jersey had been "set" at approximately 3.3 times gross profit by the previous "precedent" whereby Anheuser-Busch in 2007 terminated the distribution rights of other beer wholesalers in New Jersey to the InBev portfolio of import brands.

21.     Based on this "precedent" Mr. Conrad offered 4 times gross profit for the Elysian brands.  Mr. Short indicated he would discuss A-B's offer with others at Hunterdon.

22.     During this time and while discussing A-B's offers with regard to the Elysian brands, Hunterdon continued to fulfill its obligations to Elysian to market, distribute and sell the Elysian brands.

23. Specifically, at or near the end of February 2015, beginning of March 2015, Hunterdon arranged to purchase a new brand Elysian was releasing at Elysian's request.

24. Despite making all the customary arrangements for ordering and shipping, Elysian failed to ship the new brand to Hunterdon.

25. When Hunterdon followed up with Elysian personnel a month later to inquire about the missing shipment Hunterdon was informed that Elysian would not be shipping beer to Hunterdon due to legal issues related to its change of ownership and acquisition by A-B which had become effective April 1, 2015.

26. When Hunterdon pressed Elysian personnel regarding its refusal to ship product Hunterdon was informed that Elysian was "unable to ship Hunterdon any more beer as you are on-hold per AB-InBev."

27. At no time did Elysian state or otherwise suggest that it was seeking to terminate its distribution agreement with Hunterdon or that it believed it possessed good cause to do so.

28. Subsequent to being informed that Elysian would not be making shipment to Hunterdon "per AB-InBev," Mr. Timothy Sheehan was contacted by Randy Jozwiakowksi of A-B to discuss A-B's offer of 4 times gross profit for the Elysian brands. During the call, Mr. Sheehan communicated Hunterdon's position that 4 times gross profit did not constitute the fair market value of the Elysian brands.

29. Faced with Elysian's refusal to honor its existing legal obligations to Hunterdon at the same time representatives at A-B were seeking to obtain Hunterdon's distribution rights with respect to the Elysian brands for less than their fair market value, Hunterdon sought the assistance of legal counsel.

30.      Given that Elysian remained Hunterdon's contractual partner and Hunterdon had no contractual relationship with A-B, counsel for Hunterdon sent a letter to Matt Thompson of Elysian indicating that Elysian's refusal to receive orders and ship product to Hunterdon was without legal justification and in violation of both Hunterdon's existing distribution agreement with Elysian as well as New Jersey's Malt Alcoholic Beverage Practices Act (the "Practices Act").  A true and correct copy of the letter is attached as Exhibit B.

31.      Rather than receive a response from Elysian – its contractual partner – Hunterdon and its counsel received a response from Lisa Graivier Barnes of A-B's Legal Department on May 1, 2015.  A true and correct copy of the letter is attached as Exhibit C.

32.      In her letter Ms. Barnes did not respond to or otherwise defend Elysian's refusal to ship product to Hunterdon for the preceding months, but rather stated A-B's position that 5.5 times gross profit represented the fair market value of Hunterdon's business with respect to the Elysian brands.

33.      Three days later, and before receiving a response from Hunterdon, Anheuser-Busch sent Hunterdon a letter (the "Termination Letter") terminating its distribution rights to the Elysian brands together with a check in the amount of $562,883.46 which reflected A-B's unilateral determination of the fair market value of Hunterdon's business with respect to the Elysian brands. A true and correct copy of the letter is attached as Exhibit D.

34.      The only basis stated for Hunterdon's termination was A-B's alleged rights as a "successor brewer" under the Practices Act.

35.      On the same day A-B terminated Hunterdon it filed this action seeking a declaration that its payment of $562,883.46 constituted the fair market value of Hunterdon's business with respect to the Elysian brands.

36.     The Practices Act was enacted in 2005 and took effect on March 1, 2006. The Practices Act broadly regulates the relationship between brewers like A-B and Elysian and wholesalers like Hunterdon. In recognition of the substantial economic investment that New Jersey companies and individuals have made in beer distributorships and the vulnerability of that investment to unilateral action by their brewers, the Practices Act provides an important series of protections to wholesalers from abusive and unilateral conduct by their brewers.

37.     Among the important protections provided to wholesalers under the Practices Act are:

- Brewers may not terminate a distribution agreement except "where the brewer established that it has acted for good cause and in good faith." N.J.S.A. § 33:1-93.15(c )(1).

- Brewers must act, during the term of any distribution agreement "in a manner consistent with the covenant of good faith and fair dealing implicit in State contract law." N.J.S.A. § 33:1-93.15(c)(11).

- All contracts between brewers and wholesalers must "comply with and conform to" the terms of the Practices Act. N.J.S.A. § 33.1-93.15(a).

- The protections of the Practices Act may not be waived or modified by "written or oral agreement, estoppel or otherwise". N.J.S.A. § 33:1-93.15(a).

- Any provision of any "contract or ancillary agreement" that "directly or indirectly" requires or amounts to a waiver of the protections of the Practices Act or that "imposes unreasonable standards of performance on a wholesaler" is a violation of the Practices Act and null and void. N.J.S.A. § 33:1-93.15(a).

- If a brewer violates the termination section of the Practices Act, the wholesaler may bring an action against the brewer or a successor brewer to obtain all reasonable damages sustained. Injunctive relief and equitable relief are also available under applicable standards. In addition, a wholesaler who alleges a violation of the Practices Act, if successful, shall be entitled to all costs of that action including attorney's fees. N.J.S.A. § 33:1-93.18(a).

38.     Hunterdon has performed all material terms of its distribution agreement with Elysian.

15

39.     Neither A-B nor Elysian has tendered any good cause or good faith justification for the termination of Hunterdon's distribution agreement with Elysian.

40.     There was no good cause for the termination of Hunterdon's distribution rights with respect to the Elysian brands.

41.     The sole justification tendered for the unilateral termination of Hunterdon's distribution agreement is the language of N.J.S.A. § 33:1-93.15(d) of the Practices Act which provides in part that it shall not be a violation of this act for a successor brewer to:

> (1) terminate, in whole or in part, its contract, agreement or relationship with a wholesaler, or the contract, agreement or relationship with a wholesaler of the brewer it succeeded, for the purpose of transferring the distribution rights in the wholesaler's territory for the malt alcoholic beverage brands to which the successor brewer succeeded, to a wholesaler or wholesalers that then distributes other products of the successor brewer in such territory, provided that the successor brewer or the second wholesaler or wholesalers first pays to the first wholesaler the fair market value of the first wholesaler's business with respect to the terminated brand or brands; provided, however, that such termination shall not be permitted, and may be enjoined, where it may cause irreparable injury to the first wholesaler and the standards for injunctive relief are otherwise met…

42.     Purporting to rely on N.J.S.A. § 33:1-93.15(d), A-B's Termination Letter notified and directed that A-B had unilaterally determined that the value would be the result of a formula in which Hunterdon's gross profit with respect to the Elysian brands for the twelve months ending March 31, 2015 would be multiplied by a gross profit multiple of 5.5.

43.     No justification for this valuation determination was given other than a reference to an acquisition by A-B of Blue Point Brewing Company in 2014 and the subsequent transition of the Blue Point brands to A-B's New Jersey wholesalers for an alleged gross profit multiple of 4.75 times.

16

44.     The terms of the Blue Point's acquisition were not a proper or appropriate basis for the valuation of the fair market value of Hunterdon's business with respect to the Elysian brands.

45.     A-B was well aware that the Blue Point acquisition and subsequent transfers were not a reasonable or appropriate comparable for the fair market value of Hunterdon's business with respect to the Elysian brands.

46.     Hunterdon now brings these counterclaims and third-party claims in order to recover damages for the violations of the Practices Act and the unlawful termination of their distribution agreement with Elysian.

## COUNT ONE: VIOLATION OF THE PRACTICES ACT

47.     The allegations of the preceding paragraphs of this Counterclaim are incorporated and realleged herein by reference.

48.     A-B has terminated Hunterdon's distribution rights to the Elysian brands.

49.     There was no good cause for the termination.

50.     A-B is not entitled to rely on Section 33:1-93.15(d)(1) of the Practices Act as support for its actions because A-B did not first pay to Hunterdon the fair market value of its business with respect to the Elysian brands prior to terminating Hunterdon's distribution agreement.

## COUNT TWO: INTERFERENCE WITH CONTRACT

51.     The allegations of the preceding paragraphs of this Counterclaim are incorporated and realleged herein by this reference.

52.      At all relevant times, A-B was aware of the fact that Hunterdon was in a contractual relationship with Elysian.

17

53.     A-B had no privilege or legal excuse to interfere with the contractual relationship between Elysian and Hunterdon.

54.     A-B's interference was material, substantial and intentional.

55.     A-B's interference caused substantial harm to Hunterdon.

## COUNT THREE: CONSPIRACY TO VIOLATE
## THE PRACTICES ACT

56.     The allegations of the preceding paragraphs of this Counterclaim are incorporated and realleged herein by this reference.

57.     Prior to Hunterdon's termination, A-B and Elysian agreed to cooperate with each other to improperly coerce Hunterdon to waive or release rights it is assured under the Practices Act.

58.     The coercive and abusive tactics and strategies of Elysian and A-B include, without limitation, the actions of Elysian and A-B described above.

59.     Specifically, Elysian and A-B intended to coerce Hunterdon into either accepting an amount less than the fair market value of Hunterdon's business with respect to the Elysian brands and/or decreasing the value of Hunterdon's business with respect to the Elysian brands.

## PRAYER FOR RELIEF

WHEREFORE, Hunterdon demands:

a.     All damages resulting from the conduct of A-B, including interest on the same as appropriate;

b.     Punitive damages on account of A-B's intentional and unlawful conduct;

c.     Attorney's fees and costs; and

d.     Such other and further relief as may be just and equitable.

18

## THIRD PARTY COMPLAINT AGAINST ELYSIAN BREWING COMPANY

Pursuant to Federal Rules of Civil Procedure 14 and 19, Hunterdon Brewing Company ("Hunterdon"), by its undersigned counsel, in support of its Third-Party Complaint against Elysian Brewing Company ("Elysian") states as follows:

### COUNT ONE: VIOLATION OF THE PRACTICES ACT

1.      The allegations of the preceding paragraphs of Hunterdon's Counterclaim against A-B are incorporated and realleged herein by this reference.

2.      Prior to Hunterdon's termination by A-B and while contractually bound to honor its distribution agreement with Hunterdon, Elysian refused to receive orders or ship product to Hunterdon.

3.      Elysian had no good faith justification for its refusal.

4.      Elysian's only justification for its refusal was A-B's instruction that Hunterdon was "on-hold per AB-InBev."

5.      Elysian's refusal to ship product to Hunterdon constituted a *de facto* termination of Hunterdon's distribution agreement with Elysian.

6.      Elysian possessed no good cause for its *de facto* termination.

7.      Elysian's *de facto* termination of Hunterdon's distribution rights violated the Practices Act.

8.      Elysian's conduct toward and refusal to ship product to Hunterdon further violated the Practices Act's requirement that a brewer must, at all times, conduct itself in accordance with the principles of good faith and fair dealing implicit under New Jersey state law with dealing with its New Jersey distributor.

## COUNT TWO: BREACH OF CONTRACT

9.     The allegations of the preceding paragraphs of Hunterdon's Counterclaim against A-B and this Third-Party Complaint are incorporated and realleged herein by this reference.

10.     Elysian's refusal to receive orders and supply product to Hunterdon breached its distribution agreement with Hunterdon.

## COUNT THREE: CONSPIRACY TO VIOLATE THE PRACTICES ACT

11.     The allegations of the preceding paragraphs of Hunterdon's Counterclaim against A-B and this Third-Party Complaint are incorporated and realleged herein by this reference.

12.     Prior to Hunterdon's termination, A-B and Elysian agreed to cooperate with each other to improperly coerce Hunterdon to waive or release rights it is assured under the Practices Act.

13.     The coercive and abusive tactics and strategies of Elysian and A-B include, without limitation, the actions of Elysian and A-B described above.

14.     Specifically, Elysian and A-B intended to coerce Hunterdon into either accepting an amount less than the fair market value of Hunterdon's business with respect to the Elysian brands and/or decreasing the value of Hunterdon's business with respect to the Elysian brands.

## PRAYER FOR RELIEF

WHEREFORE, Hunterdon demands:

    a.     All damages resulting from the conduct of Elysian, including interest on the same as appropriate;

    b.     Punitive damages on account of Elysian's intentional and unlawful conduct;

c.      Attorney's fees and costs; and

d.      Such other and further relief as may be just and equitable.

GRIESING LAW, LLC


By:     **/s/ Alva C. Mather**
        Alva C. Mather, Esq.
        Ashley Kenney Shea, Esq.
        1717 Arch Street, Suite 3630
        Philadelphia, PA 19103
        amather@griesinglaw.com
        ashea@griesinglaw.com
        (215) 618-3720
        (215) 814-9049 [fax]
        www.griesinglaw.com

        ***Attorneys for Defendant, Counterclaimant and
        Third-Party Plaintiff***


Dated:  August 13, 2015

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2</u>

I certify that the matter in controversy is not the subject of any other action pending in any court, arbitration or administrative proceedings.  I further certify that there are no additional known parties who should be joined in the present action at this time.  I certify that the foregoing statements are true. I am aware that if any of the above statements are willfully false, I am subject to punishment.

GRIESING LAW, LLC

By:     **/s/ Alva C. Mather**
        Alva C. Mather, Esq.
        Ashley Kenney Shea, Esq.
        1717 Arch Street, Suite 3630
        Philadelphia, PA 19103
        amather@griesinglaw.com
        ashea@griesinglaw.com
        (215) 618-3720
        (215) 814-9049 [fax]
        www.griesinglaw.com

        ***Attorneys for Defendant, Counterclaimant and Third-Party Plaintiff***

Dated:  August 13, 2015

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1(d)(3)</u>

I, Alva C. Mather, hereby certify pursuant to L. Civ. R. 201.1(d)(3) that the damages recoverable in this action exceed the sum of $150,000, exclusive of interest and costs and any claim for punitive damages.

GRIESING LAW, LLC

By:     **/s/ Alva C. Mather**
        Alva C. Mather, Esq.
        Ashley Kenney Shea, Esq.
        1717 Arch Street, Suite 3630
        Philadelphia, PA 19103
        amather@griesinglaw.com
        ashea@griesinglaw.com
        (215) 618-3720
        (215) 814-9049 [fax]
        www.griesinglaw.com

        ***Attorneys for Defendant, Counterclaimant and Third-Party Plaintiff***

Dated:  August 13, 2015

## VERIFICATION

I, Michael Short, hereby depose and declare under penalty of perjury that I am the President of Hunterdon Brewing Company, that I am authorized to make this verification on its behalf, and that any facts contained in Hunterdon's Counterclaim and Third-Party Complaint are true and correct to the best of my knowledge, information and belief.

Michael Short, President
Hunterdon Brewing Company

Dated:  August 12, 2015

# Exhibit A



January 23, 2015

Dear Elysian Wholesaler,

Anheuser-Busch announced today we will purchase Elysian Brewing Company and its brand family, effective early second quarter 2015.

In your state, A-B has decided it will be most efficient for these brands to be distributed through the network of A-B Equity Agreement wholesalers.

Laws in your state provide for wholesalers to be compensated when a brewer decides to appoint new wholesalers to distribute beer brands after a change of control. We want to transition Elysian brands to the A-B system as quickly and as amicably as possible and have asked the A-B wholesaler(s) in your area to contact you shortly to discuss the basis for transitioning. If you have already begun transition discussions, or have completed negotiations with the A-B wholesaler(s) in your area, please contact Kelly Awbrey at (314) 577-7835 or Kelly.Awbrey@Anheuser-Busch.com as soon as possible.

If an agreement cannot be reached prior to close of this purchase, we will consider implementing the procedures described in the laws of your state to facilitate a transfer of the brands.

As a reminder, receipt of this letter and any other communication does not confer any distribution rights.

We thank you in advance for your cooperation.

Bob Tallett
Vice President, Business and Wholesaler Development


Cc:     Mark Hall

        Kelly Awbrey

Exhibit B

# GRIESING LAW LLC

Alva C. Mather, Esquire
Direct 215.501-7844
amather@griesinglaw.com

April 24, 2015

**VIA ELECTRONIC MAIL**

Matt Thompson
Vice President of Sales
Elysian Brewing Company
6010 Airport Way south
Seattle, WA 98108

       **Re:**   **Refusal to Ship Elysian Products to Hunterdon Brewing Company**

Dear Mr. Thompson:

       I represent Hunterdon Brewing Co. ("Hunterdon") and am writing to address Elysian Brewing Company's ("Elysian") refusal to comply with the terms of its existing distribution agreement with Hunterdon. Specifically, I am referring to your email to Eric Thompkins on April 8, 2015, in which you state that Elysian is "unable to ship Hunterdon any more beer as [Hunterdon is] on-hold per AB-InBev." Elysian's refusal to honor its existing legal obligations to Hunterdon to receive orders and ship product has no legal basis under New Jersey law and is in direct violation of the New Jersey Malt Alcoholic Beverage Practices Act (the "New Jersey Practices Act" or the "Act") (N.J.S.A. 33:1-93.12 *et seq.*).

       The terms and conditions of the relationship between Elysian and Hunterdon are governed by the New Jersey Practices Act. *See* N.J.S.A. 33:1-93.15(b) (providing that "[t]his act shall apply to all contracts, agreement and relationships among any brewers and wholesalers"). Among other provisions, the Act expressly prohibits a brewer from terminating, cancelling or failing to renew its relationship with a wholesaler unless it can establish that it has acted for good cause and in good faith. *Id.* at § 93.15(c)(1). The Act further provides that a brewer must, at all times, conduct itself in accordance with the principles of good faith and fair dealing implicit under New Jersey state law when dealing with its wholesaler partner. *Id.* at § 93.15(c)(11). Elysian's refusal to ship any more product to Hunterdon is in direct violation of both of these provisions of the New Jersey Practices Act as it constitutes a constructive termination of the Elysian-Hunterdon distribution agreement and evidences Elysian's failure to adhere to the principles of good faith and fair dealing in its relationship with Hunterdon.

       Furthermore, while Hunterdon is aware of Anheuser-Busch's ("A-B") purchase of Elysian and its brand family as well as A-B's desire to transition the brands from Hunterdon to A-B's existing Equity Agreement wholesalers in the state, such a transition cannot lawfully occur until A-B or its wholesalers "first pays [Hunterdon] the fair market value of [Hunterdon's] business with respect to the [Elysian brands] . . . ." *See* N.J.S.A. 33:1-93.15(d)(1). Here, no

1717 Arch Street    Suite 3630    Philadelphia Pennsylvania 19103
τ 215.618.3720    f 215.814.9049    www.griesinglaw.com

Matt Thompson
April 2, 2015
Page 2
_____

such payment has been made or even offered by A-B or its New Jersey wholesalers. Indeed, given A-B's expressed desire to transition the brands away from Hunterdon, the fact that it has instructed Elysian to not ship any more beer to Hunterdon strongly suggests that A-B, its wholesalers and/or Elysian, are seeking to coerce Hunterdon to accept less than fair value for its distribution rights to the Elysian brands by undermining the brands' value to Hunterdon and in the New Jersey marketplace.

Given these circumstances, we demand that Elysian immediately recommence the shipment of its products to Hunterdon. Understand that if you refuse, Hunterdon is prepared to pursue all necessary legal action against Elysian and/or A-B for violating the terms of the New Jersey Practices Act, including but not limited to injunctive relief as well as attorney's fees and costs for bringing the action. *See* N.J.S.A. 33:1-93.18 (providing for the recovery of the costs of the action, including reasonable attorney's fees).

Sincerely,

Alva C. Mather

Cc:    Bill Pfinsgraff (*via e-mail*)

Exhibit C



Legal Department
One Busch Place
St. Louis, Missouri 63118-1852
U.S.A.
314-577-2000
Direct dial 314-577-4071

May 1, 2015

Via Electronic Mail

Alva C. Mather, Esq.
Griesing Law LLC
1717 Arch Street
Suite 3630
Philadelphia, PA 19103

Re:  Correspondence to Elysian Brewing Co. Dated April 24, 2015

Dear Ms. Mather:

This responds to your April 24, 2015 letter to Matt Thompson. As you know, Anheuser-Busch ("AB") recently acquired Elysian Brewing Company and is a "successor brewer" under the New Jersey Malt Alcoholic Beverage Practices Act ("Practices Act"). AB seeks to transfer the distribution rights for the Elysian brands to the wholesalers who currently distribute other AB products in New Jersey. As Judge Kugler ruled in *Warren Distributing Co. v. InBev USA LLC*, 2010 U.S. Dist. LEXIS 55542, at *44 (D.N.J. June 7, 2010), the Practices Act "does not require any kind of negotiation before a FMV offer and tender is made." Despite having no obligation to do so. AB did attempt to negotiate and reach a mutually satisfactory arrangement with both local management of Hunterdon and the owners in order to avoid the need to invoke the successor brewer provision of the Practices Act.

Those efforts have to date been unsuccessful. It is our understanding that the only amount Hunterdon has discussed is a multiple of 12 times gross profits. A multiple of 12 times is unreasonable and grossly excessive. As you know from your involvement in the *Warren* matter, after a lengthy and costly trial, the jury concluded that the fair market value of the European brands (Stella, Bass, Beck's, etc.) was 3.3x GP and the fair market value of the Rolling Rock brands was 2.5x GP. The jury's finding on valuation was consistent with prior transactions for the same or similar brands in New Jersey. Last year, AB acquired a craft brewer in New York. Blue Point Brewing Company. The Blue Point brands were transitioned to the AB wholesalers in New Jersey at 4.75x GP. AB is prepared to pay 5.5x Hunterdon's gross profits earned on its sales of the Elysian brands for the twelve months ending March 31, 2015. That amount reflects the fair market value of the Elysian brands and represents a 15% premium to the comparable Blue Point transaction.

Your suggestion that "A-B, its wholesalers and/or Elysian" are somehow seeking to undermine the value of the Elysian brands makes little sense. It is not in AB's interest or the successor

wholesalers' interest to undermine the Elysian brands in the New Jersey marketplace. To the contrary, AB seeks a smooth transition in order to maintain the brands' market presence and to avoid disruption. In any event, AB will pay Hunterdon 5.5 times its gross profits on sales for the twelve months trailing March 31, 2015, the day before AB's acquisition was completed. Thus, current sales to retailers will not be an element of the fair market value calculation.

AB will comply with the Practices Act and only transition the Elysian distribution rights upon the payment of fair market value. We would like to do so in an orderly fashion, and we hope and expect that a payment of 5.5x GP will fully resolve this matter. Attached is a copy of an email sent yesterday from AB's Randy Jozwiakowski to Tim Sheehan, and our request for a response by the end of the day today.

Sincerely,

Lisa Graivier Barnes
Associate General Counsel

Exhibit D



Robert M. Tallett
Vice President
Business & Wholesaler Development

May 4, 2015

**_Via Hand Delivery_**

Mr. Michael Short
President
Hunterdon Brewing Co.
12 Coddington Road
Whitehouse Station, NJ  08889

Dear Mr. Short:

As you are aware, Anheuser-Busch, LLC ("Anheuser-Busch") has acquired Elysian Brewing Company ("Elysian").  Anheuser-Busch has decided that it will be most efficient for the Elysian brands to be distributed through the network of wholesalers that currently distribute Anheuser-Busch's other brands in New Jersey.  We had hoped to work with Hunterdon Brewing Co. ("Hunterdon") to transition the Elysian brands to the Anheuser-Busch system as quickly and as amicably as possible.  We are disappointed that despite our efforts we have not been able to conclude a mutually satisfactory arrangement for the transition of these brands.

As a result, in accordance with N.J. Stat. § 33:1-93.15(d)(1), Anheuser-Busch hereby gives notice that any existing contract, agreement, and/or relationship Hunterdon may have with Elysian or Anheuser-Busch with respect to the distribution rights of the Elysian brands will be terminated so that those distribution rights can be transferred to the wholesalers that currently distribute other Anheuser-Busch products in New Jersey.  The termination is effective immediately upon delivery of the enclosed fair market value payment.

Enclosed please find a check from Anheuser-Busch in the amount of $562,883.46.  This payment represents Anheuser-Busch's determination of the fair market value of Hunterdon's business with respect to all Elysian brands.  This fair market value payment has been calculated by applying a multiple of 5.5 to our estimate of Hunterdon's gross profit earned during the twelve months ending on March 31, 2015 on sales of the Elysian brands ($102,342.45).  In calculating this payment, we estimated Hunterdon's gross profit to be $12 per case equivalent.  The multiple of 5.5x GP, which reflects the fair market value of the Elysian brands, is consistent with or higher than comparable New Jersey transactions.  For example, AB acquired Blue Point Brewing Company in 2014, and its brands were transitioned to the AB wholesalers in New Jersey at 4.75x GP.  The 5.5x for the Elysian brands represents a 15% premium to the comparable Blue Point transaction.

We ask that you provide Hunterdon's gross profit earned during the twelve months ending on March 31, 2015 on sales of the Elysian brands so that we can confirm the accuracy of our payment.  If we have underestimated Hunterdon's gross profit, we will promptly make an appropriate adjusting payment.  If we have overestimated, we will ask Hunterdon to refund the difference.

Anheuser-Busch
Executive Offices
One Busch Place
St. Louis, MO U.S.A. 63118-1852
Tel  (314) 577-7811

Robert M. Tallett
Vice President
Business & Wholesaler Development

Mr. Michael Short
May 4, 2015
Page 2


If you have saleable inventory with at least 30 days remaining until the last date on which it may be resold at retail, the successor wholesalers offer to purchase it.  As is typical in brand transfer transactions, those purchases would be made at Hunterdon's laid-in cost for such inventory, consisting of the purchase price actually paid by Hunterdon for the inventory, net of all discounts, rebates, and allowances actually received by Hunterdon, plus non-refundable excise taxes and freight actually paid by Hunterdon to bring the inventory to its warehouse.   We are prepared to arrange this inventory purchase as soon as possible.

Sincerely,

Bob Tallett
Vice President, Business & Wholesaler Development

dlk
enclosures

Anheuser-Busch
Executive Offices
One Busch Place
St. Louis, MO U.S.A. 63118-1852
Tel 1314 577-7811

## CERTIFICATE OF SERVICE

I, Alva C. Mather, hereby certify that on this 13th day of August, 2015, I caused a true and correct copy of this Amended Answer, Counterclaim, and Third-Party Complaint On Behalf of Hunterdon to be served via this Court's Electronic Filing System (ECF) as well as electronic and first class mail upon the following:

William M. Tambussi
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108

Peter E. Moll
Brian D. Wallach
CADWALADER, WICKERSHAM & TAFT, LLP
700 Sixth Street, N.W.
Washington, D.C. 20001

**Attorney for Plaintiff and Counterclaim Defendant Anheuser-Busch, LLC**

Elysian Brewing Company
6010 Airport Way S.
Seattle, WA 98108

**Third-Party Defendant**

**/s/ Alva C. Mather**
Alva C. Mather, Esquire